# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

TELESERVICES GROUP, INC.,                           Case No.  HG 05-00690

      Debtor.

_____/

MARCIA R. MEOLI,

      Plaintiff,

vs.                                                 Adv. Pro. No.  07-80037

THE HUNTINGTON NATIONAL BANK,

      Defendant.

_____/

## OPINION RE: HUNTINGTON'S OCTOBER 7, 2011 MOTION - ENFORCEMENT OF AUTOMATIC STAY

The Huntington National Bank ("Huntington") requests that the automatic stay be enforced with respect to litigation that El Camino Resources, Ltd. ("El Camino") has commenced against it in the federal district court.[1] For the reasons given in this opinion, the court determines that the stay prohibits El Camino from proceeding further with that litigation.

---

[1] *El Camino Res., Ltd. v. Huntington Nat'l Bank*, No. 1:07-cv-598 (W.D. Mich. filed June 22, 2007).

## JURISDICTION

Jurisdiction exists[2] and the issue raised is a core matter.[3] This court also has the authority to enter a final order[4] because the matter relates to the enforcement of the automatic stay. *Cf. Meoli v. Huntington Nat'l Bank (In re Teleservices Group, Inc.)*, 456 B.R. 318, 335-36 (Bankr. W.D. Mich. 2011).

## BACKGROUND

Barton Watson, a convicted con man, used both Teleservices Group, Inc. ("Teleservices") and a related company, Cyberco Holdings, Inc. ("Cyberco"), to perpetrate a massive fraud against numerous equipment finance companies, including El Camino.[5] He deceived his victims by convincing them that they were financing Cyberco's purchase of computer equipment from Teleservices. Although Teleservices was held out as an independent, third party vendor, it was in fact nothing more than a few bank accounts. Watson used fake invoices to trick the equipment finance companies into depositing millions of dollars into one of these accounts. He would then transfer the purloined funds to Cyberco in order to sustain the scheme as well as to support his own extravagant lifestyle.

Huntington became involved when it replaced a Chicago bank as Cyberco's lender. The relationship included Huntington's management of Cyberco's cash through a revolving line of credit

---

[2] 28 U.S.C. §§ 1334 and 157(b)(1) and W.D. Mich. LCivR 83.2.

[3] 28 U.S.C. § 157(b)(2)(A).

[4] *i.e.*, an order subject only to appeal pursuant to 28 U.S.C. § 158.

[5] *See, e.g., Meoli v. Huntington Nat'l Bank (In re Teleservices Group, Inc.)*, 444 B.R. 767 (Bankr. W.D. Mich. 2011).

combined with regular sweeps of Cyberco's Huntington accounts. Consequently, Huntington ended up being the recipient of all of the wire transfers Watson had been making from Teleservices to Cyberco. Huntington also received some checks directly from Teleservices during Cyberco's waning months in payment of the Cyberco indebtedness.[6]

Trustee has sued Huntington to avoid as fraudulent both the payments Huntington received directly from Teleservices and the amounts it received indirectly through the wire transfers being made into Cyberco's deposit accounts. The issue here, though, relates to only one of the direct transfers, that being an October 22, 2004 check from Teleservices to Huntington in the amount of $1,945,283.04. The issue arises because El Camino claims that it can trace what it had deposited with Teleservices to that check.

This court has already determined that the October 22nd check represented an actually fraudulent transfer by Teleservices and that Huntington cannot claim good faith in connection with its receipt.[6] However, a final determination of Huntington's liability regarding this transfer and the many others it received has yet to be made because some issues still remain. Moreover, the district court will have to review de novo whatever this court does finally decide.[7]

As for the district court litigation, it too is coming to a close. El Camino's original complaint included counts that Huntington had aided and abetted Watson's fraud and that it had otherwise

---

[6]Cyberco closed in late November 2004 after the FBI raided its offices. An involuntary petition was filed against Cyberco within days and Teleservices filed its own bankruptcy petition approximately one month later.

[6]444 B.R. at 787, 830.

[7]*In re Teleservices*, 456 B.R. 318 (holding that only an Article III judge has the constitutional authority to enter the requested money judgment against Huntington).

converted what El Camino had paid Teleservices.  However, the district court summarily dismissed these counts,[8] leaving El Camino at this point with only its claim that Huntington was unjustly enriched by the October 22nd transfer.[9]  Trial of this remaining count is scheduled for April 2012.

Huntington's request to have the district court litigation stayed is prompted by its concern that it will have to account twice, once to the Teleservices estate and again to El Camino, for this one transfer.  The motion was heard on November 22, 2011.  The court took the matter under advisement at the conclusion of oral argument.[10]

## DISCUSSION

Standing

As El Camino correctly points out, the automatic stay protects only the estate and the debtor.  *See, e.g., Patton v. Bearden*, 8 F.3d 343, 348 (6th Cir. 1993); *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 126-27 (4th Cir. 1983).  Therefore, a junior mortgagee ordinarily has no standing to oppose a senior mortgagee's motion to modify the stay. It is also typical for the trustee, as opposed to a creditor, to decide whether the stay should be enforced or not.  Indeed, in this instance Huntington is not even a creditor of the Teleservices estate.[11]

---

[8]*El Camino Res., Ltd. v. Huntington Nat'l Bank*, 722 F. Supp.2d 875 (W.D. Mich. 2010).

[9]Although another creditor, ePlus Group, Inc., had joined El Camino in some of the counts, Huntington's motion for summary judgment also disposed of all of ePlus' claims.

[10]Huntington has also requested in the alternative that this court use its Section 105 authority to enjoin El Camino.  However, the court's recognition that the automatic stay applies in this instance renders that request moot.

[11]Huntington's lending relationship was with Cyberco, not Teleservices.

4

Nonetheless, Trustee's decision to commence this adversary proceeding has made Huntington an unwilling participant in this estate's administration. Moreover, Trustee's pursuit of the same transfer that gives rise to El Camino's unjust enrichment claim does raise the spectre of Huntington having to pay twice. It only seems fair, then, that Huntington should be able to ask this court whether the Section 362[12] stay applies.

"In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205 (1975). The concept reflects both the Constitution's requirement that an Article III court must actually have a "case or controversy" before it and the limits that the federal judiciary has imposed upon itself over the years. *Allen v. Wright*, 468 U.S. 737, 750-51, 104 S. Ct. 3315, 3324 (1984). Therefore, a party seeking relief from a federal court must allege "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* at 751 (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S. Ct. 752, 758 (1982)). However, a party's standing is ultimately to be decided through the court's own assessment of the claim being made.

> Is the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable? Is the line of causation between the illegal conduct and injury too attenuated? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative?

*Allen v. Wright*, 468 U.S. at 752, 104 S. Ct. at 3325.

---

[12]11 U.S.C. § 362. Debtor's petition pre-dates the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, § 1501(B)(1), 119 Stat. 23. Unless otherwise indicated, all citations in this opinion to the Bankruptcy Code will be to the Bankruptcy Code as written prior to the BAPCPA amendments. The citation will be "Section _____."

5

With this guidance, the court is satisfied that Huntington does have standing to appear before it and argue the merits of whether the automatic stay affects El Camino's district court litigation. As another court said in a similar case:

> [T]o establish that it has standing . . . it is enough for RICH [a third party] to establish that it is in the "zone of interest" of *§ 362* by demonstrating that it has "a cognizable interest in the subject property" and that it is a party "whose interests have been harmed" by the actions taken in alleged violation of the stay.

*Rehab. Inner City Housing, LLC v. Major of Baltimore City (In re Lesick).*[13]

In this instance, Huntington clearly risks additional loss if both lawsuits proceed unabated. Moreover, the loss is not speculative given that the district court litigation is also pending. And finally, this court is capable of addressing the harm Huntington fears by declaring that the automatic stay applies.

Application of the Automatic Stay

The next question is whether El Camino's district court litigation in fact violates the stay. At first blush, the answer would seem to be no. The Teleservices estate is seeking the recovery of a fraudulent transfer under Section 548 whereas El Camino is asking for damages based upon unjust enrichment. Should not El Camino be entitled to pursue what would appear to be its own grievance against Huntington without interference from the bankruptcy proceeding? Indeed, the case law makes a distinction between causes of action that involve harm to the debtor and causes of action involving harm to the creditor, with the latter being treated as belonging exclusively to the creditor. "If a cause of action belongs solely to the estate's creditors . . . the trustee has no standing to pursue the claim." *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 853 (6th Cir. 2002).

---

[13]2006 WL 2083655 (Bankr. D. D.C.) (citation omitted).

6

*See also Honigman v. Comerica Bank (In re Van Dresser Corp.)*, 128 F.3d 945, 947 (6th Cir. 1997). Moreover, there may be occasions when the trustee and a creditor are both entitled to a recovery from the defendant with respect to the same transaction. *Cf. Honigman*, 128 F.2d at 949 (Court holding that state law, not bankruptcy law, prohibited creditor from a second recovery from the same defendant).[14]

However, while the general rule is to permit creditors to proceed postpetition with their own third party claims, an exception has been made for fraudulent transfer actions. In those instances, the courts have held that a creditor may not commence its own avoidance action against a third party.[15] Rather, the courts have determined that the estate's right to avoid that transfer as fraudulent preempts an individual creditor's ability to proceed on its own. *Id. See also* 11 U.S.C. § 544(b)(1).[16]

---

[14]El Camino also cites *Torcise v. Cmty. Bank of Homestead (In re Torcise)*, 116 F.3d 860 (11th Cir. 1997) as exemplifying judicial indifference to a bank's exposure to multiple judgments arising out of the same transaction. In that instance, both the creditors committee in a Chapter 11 proceeding and another secured creditor had separately sued the bank. The appeal involved the trial court's denial of the bank's motion to join the other secured creditor as a necessary party to the committee's avoidance actions.

The Eleventh Circuit affirmed the lower court. One of the reasons it gave was: "Bel-Bel's [the other secured creditor's] claims against Bank are tort and conspiracy actions for money damages. Torcise's and Grower's [i.e. the committee's] claims against Bank involve claims under federal and state bankruptcy law." *Id*. at 866.

El Camino argues that this same distinction is applicable here. However, as will be explained later in this opinion, El Camino's unjust enrichment claim is not that different from the fraudulent transfer action Trustee is pursuing here. Moreover, as will also be explained, the issue in this instance turns on the automatic stay, which was not even discussed in *Torcise*.

[15]*See, e.g., NBD Bank, N.A. v. Fletcher (In re Fletcher)*, 176 B.R. 445, 452 (Bankr. W.D. Mich. 1995), *rev'd on other grounds, sub nom NBD Bank, N.A. v. Lindquist (In re Van Orden)*, 1995 WL 17903731 (W.D. Mich. 1995). 5 *Collier on Bankruptcy* ¶ 548.02 [5] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2011).

[16]    [T]he trustee may avoid any transfer of an interest of the debtor in
       property . . . that is voidable under applicable law by a creditor
       holding an unsecured claim that is allowable under section 502 of this

All of these decisions rely upon the automatic stay for justification. However, there are two different rationales. The more popular is that the fraudulent transfer itself is part of the bankruptcy estate. Courts that subscribe to this view conclude that it is Section 362(a)(3)'s stay of acts against the estate's property that prevents individual creditors from also pursuing postpetition fraudulent transfers. *See, e.g., Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1275 (5th Cir. 1983).

A few courts, though, have questioned *MortgageAmerica Corp.* because of Section 541(a)(3)'s suggestion that a voidable transfer does not become property of the estate until there has in fact been a recovery.[17] For example, the Second Circuit has said:

> "If property that has been fraudulently transferred is included in the § 541(a)(1) definition of property of the estate, then § 541(a)(3) is rendered meaningless with respect to property recovered pursuant to fraudulent transfer actions." 101 B.R. at 305. Further, "the inclusion of property recovered by the trustee pursuant to his avoidance powers in a separate definitional subparagraph clearly reflects the congressional intent that such property is not to be considered property of the estate until it is recovered."

*FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 132 (2nd Cir. 1992) (quoting from *In re Saunders*, 101 B.R. 303, 305 (Bankr. N.D. Fla. 1989).[18]

---

[17] title or that is not allowable only under section 502(e) of this title.

[The bankruptcy] estate is comprised of all of the following property
* * *
(3) Any interest in property that the trustee **recovers** under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

11 U.S.C. § 541(a)(3) (emphasis added).

[18]It is not altogether clear which of these two theories the Sixth Circuit embraces. On the one hand, the Sixth Circuit has cited with approval *In re MortgageAmerica*. *See N.L.R.B. v. Martin Arsham Sewing Co.*, 873 F.2d 884, 887 (6th Cir. 1989). However, its approval seemed hesitant. "Any effort to recover this [fraudulently transferred] property is **essentially** an action to recover

This court agrees. Although the recovery of an avoided transfer certainly augments the estate, the trustee's ability to actually avoid the transfer is not an interest acquired from the debtor, but rather a power that derives from the Code itself. It mirrors the same power individual creditors have under state law to avoid fraudulent transfers. Indeed, in neither instance does the power to avoid the transfer even arise until the debtor has first divested himself of the interest to be recovered.

The court also agrees with *Colonial Realty* that Section 362 stays postpetition avoidance actions nonetheless because it prohibits actions being taken "against the debtor" as well. *Id.* at 132.[19] A creditor should be able to pursue its own causes of action against another without interference from the bankruptcy estate when the creditor has a separate contractual claim against that party or the party has engaged in tortious conduct specifically injuring that creditor. However, fraudulent transfer actions are different because they do not require either privity with the transferee or even misconduct on the transferee's part. The focus instead is upon the debtor and, in particular, the debtor's decision to transfer the property in question. As for the recipient, his conduct becomes

---

property that belongs to the debtor." *Id.* (emphasis added). This equivocation at the very least suggests that the panel in *Martin Arsham Sewing* might have been persuaded by *Colonial Realty*'s and *Saunders'* reasoning had those decisions been published earlier.

[19]Although *Colonial Realty* relies on Section 362(a)(1), Section 362(a)(6) sets forth the same prohibition.

> [A] petition filed under Section 301 . . . operates as a stay, applicable to all entities, of—
>
> * * *
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(6).

relevant only when value has also been exchanged. If, on the other hand, the transfer was gratuitous, the recipient will be held accountable in most instances regardless of his innocence.[20]

This distinction makes a fraudulent transfer action more akin to a post-judgment remedy than a tort or contract claim. What, for example, is the difference between a creditor's avoidance of a debtor's fraudulent transfer and that same creditor's garnishment of the debtor's accounts receivable? While each involves an action against a third party, each is predicated on there also being an obligation owed that creditor by the debtor. The third party has been targeted only because his own dealings with the debtor have placed him in the unfortunate position of being able to assist the creditor in the collection of that debt.

In sum, postpetition fraudulent transfer actions by creditors are prohibited by the automatic stay because they cannot stand independent of that creditor's claim against the debtor. As the court observed in *Colonial Realty*:

> While a fraudulent transfer action may be an action against a third party, it is also an action "to recover a claim against the debtor." Absent a claim against the debtor, there is no independent basis for the action against the transferee.

*Id.* (quoting from *Saunders*, 101 B.R. at 305).

Unjust Enrichment

The final question is whether the pending district court litigation should be stayed for similar reasons. El Camino insists that its unjust enrichment claim is not comparable to a fraudulent transfer

---

[20]For example, while Section 548(c) offers the initial transferee a defense, it depends upon the recipient taking in good faith **AND** for value. The same is also true for subsequent transferees relying upon the Section 550(b)(1) defense. Indeed, good faith alone offers a safe haven only in the much rarer instance where the subject transferee took from someone who himself was a recipient eligible for the Section 550(b)(1) defense. *Cf.* 11 U.S.C. § 550(b)(2). *See also* MICH. COMP. LAWS § 566.38.

10

action. As El Camino puts it, the relief it seeks is "both different from and not otherwise available to the Trustee in the Adversary Proceeding."[21]

The issue, though, is not whether El Camino has usurped a cause of action belonging to the estate. Teleservices without doubt intended Huntington's receipt of the challenged transfer. As such, Trustee, as Teleservices' successor, is in no position now to complain that Huntington was unfairly enriched. *Cf. Richardson v. Huntington Nat'l Bank (In re Cyberco)*, 382 B.R. 118, 130 (Bank. W.D. Mich. 2008). Nonetheless, Trustee, and, for that matter, Huntington, may still ask whether El Camino's pursuit of its unjust enrichment claim serves a purpose any different from the one served had El Camino chosen to pursue a prohibited fraudulent transfer action instead.[22]

Unjust enrichment is a common law theory. *Id.* at 127-28. It evolved from a court's willingness to expand the original writ of assumpsit to first provide a remedy for "implicit" contracts and then for any situation where justice warranted legal redress. *Id.*

> The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of or for property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor.

*Buell v. Orion State Bank*, 327 Mich. 43, 56, 41 N.W.2d 472 (1950) (citations omitted).

---

[21]Creditor El Camino Resources, Ltd.'s Brief in Opposition to Huntington's Motion to Stay District Court Litigation at 5 (DN 438).

[22]El Camino also argues that its unjust enrichment claim is different because El Camino intends to resurrect its jury demand in the district court litigation. However, short of a constitutional challenge to Section 362(a)(6), it is not clear why El Camino's right to a jury should have any relevance one way or the other with respect to determining whether the automatic stay applies.

Indeed, constructive trust, which is another theory that El Camino had been pursuing against Huntington,[23] is nothing more than the equitable counterpart to unjust enrichment. The two differ only with respect to the relief received. If the defendant remains in possession of the subject property, then a court will typically impose a constructive trust as a device to compel its return. If, though, the property has been transferred and the defendant owns nothing else against which a trust could be imposed, the court will award damages instead on the theory that the defendant was unjustly enriched. *Id.*

Actions for unjust enrichment and constructive trust therefore share with fraudulent transfer actions a common purpose – they are all intended to remedy situations where the defendant has benefitted unfairly. And in this particular situation, it happens that Trustee has simply chosen one of these remedies and El Camino another in order to rectify what both agree is the same injustice deriving from Huntington's receipt of the same transfer. Moreover, each action is justified not upon harm being done by Huntington, but upon debt being owed by Teleservices. Indeed, the only real difference between Trustee's and El Camino's actions against Huntington is that the recovery Trustee seeks is for the benefit of all of Teleservices' creditors, including El Camino, whereas any recovery by El Camino would be only for its own benefit.

---

[23]El Camino had asked the district court to impose a constructive trust on Huntington and that count had also survived Huntington's dispositive motion. However, El Camino recently elected to dismiss it, thereby leaving unjust enrichment as El Camino's only remaining claim in the district court litigation.

## CONCLUSION

The court recognizes the injustice El Camino perceives – that it is being compelled to share with Teleservices' creditors a recovery traceable to funds that El Camino believes were stolen from it. However, the overall objective of a bankruptcy proceeding is to create a single forum into which all recoveries like the one anticipated here are to be brought and then distributed. El Camino, may, if it chooses, still claim that it has a superior right to whatever the estate recovers from Huntington on account of the October 22nd transfer. That, though, is an argument to be made before this court in connection with the administration of this case. It is not to be decided elsewhere under the guise of some third party complaint. Indeed, it is for this very reason that the automatic stay prohibits El Camino from continuing with its remaining count in the district court litigation.[24]

---

[24]Judge Kennedy made similar observations in *N.L.R.B. v. Martin Arsham Sewing Co.*:

> The corporate Chapter 7 bankruptcy case is designed to provide an orderly proceeding in which the debtor corporation's assets may be marshalled and their pro rata distribution to creditors obtained. To this end the Bankruptcy Court is vested with exclusive jurisdiction over all the debtor's property. *See* 28 U.S.C. § 1471(e) (1982). The filing of a bankruptcy petition operates as a stay of any action to obtain possession of "property of the estate" which is comprised of "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1) (1982). *See* 11 U.S.C. § 362(a) (1982). Once the trustee, under the auspices of the Bankruptcy Court, has collected all the debtor's property the Code dictates an elaborate step-by-step distribution order which serves to ensure an equitable distribution of the debtor's assets. *See* 11 U.S.C. § 726 (1982). These characteristics of bankruptcy-the exclusive jurisdiction of the Bankruptcy Court, the stay of any creditors' piecemeal actions to collect the property of the debtor's estate, and the detailed order for distribution of the debtor's assets-protect equal treatment for all creditors and avoid the incoherent dismemberment of the debtor which would occur under a "first-come-first-served" scheme. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 178, *reprinted in*, 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6138.

The court will prepare a separate order consistent with this opinion.

_1/18/12_

Hon. Jeffrey R. Hughes
United States Bankruptcy Judge

Signed this 18th day of January, 2012
at Grand Rapids, Michigan.

---

      In a further effort to consolidate all the debtor's assets and distribute them equally between creditors, the Bankruptcy Code contains provisions empowering the court or the trustee in bankruptcy to recover property belatedly, unlawfully, or fraudulently transferred by the debtor in an effort to place it outside the reach of creditors.

873 F.2d at 887.